1

2

3

4

5

6

7

8                 UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF WASHINGTON

9                        AT SEATTLE

10   ANDREW RUTHERFORD,              CASE NO. C09-1693 MJP

11              Plaintiff,           ORDER DENYING DEFENDANTS'
                                 RENEWED MOTION FOR

12        v.                    JUDGMENT AS A MATTER OF
                                 LAW

13   JASON McKISSACK, et al.,

14              Defendants.

15

16       This matter comes before the Court on Defendants' renewed motion for judgment as a

17 matter of law.  (Dkt. No. 183.)  Having reviewed the motion, the response (Dkt. No. 189), the

18 reply (Dkt. No. 191), and all related papers, the Court DENIES the motion.

19                       **Background**

20       Given the parties' familiarity with the case, the Court provides little background.

21 Because Defendants' arguments focus on the potential inconsistency between the unlawful

22 detention and false imprisonment claims, the Court lays out the jury instructions in some detail.

23       In "Count Four," the jury was instructed on Rutherford's claim of false imprisonment.

24 The jury was told to consider whether Defendant Chin falsely imprisoned Rutherford during "the

events that transpired after Defendant Chin ordered Plaintiff to the ground in their initial

confrontation." (Dkt. No. 157 at 23.) Rutherford had to prove to the jury three elements: "(1)

Plaintiff was restrained or imprisoned; (2) Defendant Chin's actions were a proximate cause of

the restraint or imprisonment; and (3) Defendant Chin . . . exceeded the reasonable length and

scope of the investigatory stop." (Id.) As to the first element the jury was instructed as follows:

> A person is restrained or imprisoned when he is deprived of either liberty of
> movement or freedom to remain in the place of his lawful choice; and such
> restraint or imprisonment may be accomplished by physical force alone, or by
> threat of force, or by conduct reasonably implying that force will be used.

(Id.)

The false imprisonment claim was similar to, but distinct from the unlawful detention

claim in "Count One." In the unlawful detention claim, the jury was instructed to consider a

similar time frame as to the commencement of the acts: "you are to focus only on the time from

when Plaintiff exited Mr. Alfonzo's vehicle up to the point Plaintiff got up from being seated on

the roadway." (Dkt. No. 157 at 16.) The unlawful detention claim required Rutherford to prove

that Defendant Chin exceeded the reasonable length and scope of the investigatory stop.

Rutherford had to prove three elements: (1) Defendant Chin seized Plaintiff's person; (2) in

seizing Plaintiff's person, Defendant Chin acted intentionally; and (3) the seizure was

unreasonable. (Id.) The parties stipulated to the fact that Rutherford was seized. (Id. at 17.)

The Court also defined what it meant to be seized using the Ninth Circuit pattern instruction:

> A defendant "seizes" the plaintiff's person when he restrains the plaintiff's liberty
> by physical force or a show of authority. A person's liberty is restrained when,
> under all of the circumstances, a reasonable person would not have felt free to
> ignore the presence of law enforcement officers and to go about his business.

(Id.) Of particular note, this definition varies from the instructions defining "restrain or

imprison" in the false imprisonment claim.

The jury returned a general verdict in favor of Rutherford only on the unlawful detention claim, not the false imprisonment or any other claim.

**Analysis**

A.      Standard of Review

"Judgment as a matter of law is proper if the evidence, viewed in the light most favorable to the nonmoving party, permits only one reasonable conclusion." Graves v. City of Coeur D'Alene, 339 F.3d 828, 838 (9th Cir. 2003) abrogated on other grounds by Hiibel v. Sixth Judicial Dist. Ct. of Nv., 542 U.S. 177 (2004).  "A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002). The Court is instructed "not [to] weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion." Harper v. City of Los Angeles, 533 F.3d 1010, 1021 (9th Cir. 2008).  "If sufficient evidence is presented to a jury on a particular issue and if the jury instructions on the issue stated the law correctly, the court must sustain the jury's verdict." Id.

B.      No Inconsistent Verdict

Defendants essentially argue that the jury returned an inconsistent verdict that requires judgment as a matter of law to be entered in their favor.  This is erroneous.  Defendants have failed to show an actual inconsistency in the verdict.

Although the Ninth Circuit has recognized three potential ways a general verdict can be inconsistent, only one is relevant here: when the jury returns "two general verdicts that, under any facts, seem to be legally irreconcilable." Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1032 (9th Cir. 2003).  In Zhang the court found no inconsistency in a general verdict where the

jury found for plaintiff on his § 1981 racial discrimination claim, but against him on his claim

brought under Washington's Law Against Discrimination. <u>Id.</u> at 1034-35. The Court concluded

that, "[u]nless one legal conclusion is the prerequisite for another, inconsistencies between them

must stand." <u>Id.</u> at 1034.

Like the outcome in <u>Zhang</u>, Defendants have not shown the verdicts to be legally

irreconcilable. The two claims involve different legal standards, and neither is a prerequisite to

the other. In the false imprisonment claim, Rutherford had to prove he was "restrained or

imprisoned," a fact to which the parties did not stipulate. In the unlawful detention claim,

however, Rutherford had to prove he was "seized," a term that was not only defined differently

from "restrained or imprisoned," but also stipulated to as being proved by the parties. The

claims thus involved different legal questions, and although there was some overlap, the two

claims are not coextensive or predicates to each other. The jury's general verdicts produced no

inconsistencies.

Defendants seize on the fact that both claims required the jury to determine whether

Defendant Chin "exceeded the reasonable length and scope of the detention." But Defendants

fail to explain how this one element makes the two claims legally coextensive or predicates to

each other. They ignore that the two claims involve different legal standards and have different

elements, which permitted the jury to reach different conclusions. This is a fatal defect in

Defendants' motion. The Court DENIES Defendants' motion for judgment as a matter of law

on this issue.

C.     <u>Sufficiency of Evidence Supports the Verdict</u>

Defendants attempt to reargue the merits of the case without acknowledging or applying

the deferential standard owed to Rutherford's presentation of the facts and the jury's verdict. <u>See</u>

1    <u>Pavao</u>, 307 F.3d at 918.  Defendants start from the faulty premise that the jury must have ignored

2    the Court's instructions and considered the events occurring prior to Rutherford exiting the Jeep

3    in order to find for Rutherford on the unlawful detention claim.  <u>See</u> <u>Westinghouse Elec. Corp. v.</u>

4    <u>Gen. Circuit Breaker & Elec. Supply Inc.</u>, 106 F.3d 894, 902 (9th Cir. 1997) ("[T]he court [is] to

5    presume that juries follow the law.").  Defendants' argument is deeply flawed.

6         In "Count One, the jury ultimately only had to determine whether Defendant Chin

7    exceeded a reasonable length and scope of the <u>Terry</u> stop.  The Court first instructed the jury that

8    Defendant Chin had authority to investigate "the municipal law violations of reckless driving and

9    driving under the influence." (Dkt. No. 157 at 16.)  The jury was then told that it had to consider

10   the totality of the circumstances to determine whether the investigatory stop exceeded a

11   reasonable length and scope from the time Rutherford exited the Jeep to when Rutherford got up

12   from being seated in the roadway.  (<u>Id.</u> at 16-17.)  To make this determination the jury was

13   instructed to consider: (1) the aggressiveness of the police methods; (2) how much of Plaintiff's

14   liberty was restricted; and (3) whether the officer had a sufficient basis to fear for his safety to

15   warrant the intrusiveness of the action taken.  (<u>Id.</u>)

16        At trial, Rutherford put on substantial evidence that his detention exceeded a reasonable

17   length and scope.  The jury heard testimony that Defendant Chin used a highly aggressive

18   manner in confronting all three individuals.  The jury also heard testimony from Rutherford and

19   Alfonzo that Defendant Chin pointed his gun at Rutherford and forced him to sit at gun point.

20   (Rutherford Testimony at 35-39; Alfonzo Testimony at 22-26.)  This severely restricted

21   Rutherford's liberty and used an extremely high level of force for a situation where none of the

22   suspects were armed, and were there was no ongoing criminal activity.  The jury also heard

23   testimony that Alfonzo identified himself as the driver, which permitted Defendant Chin to

24

1  exclude Rutherford as a suspect of the two municipal violations he observed the driver of the

2  Jeep make.  While Defendant Chin may have had reason to doubt that Alfonzo was the driver, it

3  was up to the jury to determine, based on the totality of the circumstances, whether it was

4  reasonable to continue to detain Rutherford.  (Dkt. No. 157 at 17.)  This evidence was sufficient

5  to permit the jury to return a verdict in favor of Rutherford on this claim, and the Court must

6  sustain the verdict.  Harper, 533 F.3d at 1021.

7        The Court DENIES Defendants' motion on this issue.

8  D.    Qualified Immunity

9        Defendants argue that Defendant Chin is entitled to qualified immunity because he was

10 permitted to use his gun during the Terry stop without acting illegally.  This is yet another

11 untenable and flawed argument.

12       First, the argument improperly characterizes the jury's verdict.  Because the jury returned

13 a general verdict, the Court cannot know exactly why the jury found Defendant Chin exceeded

14 the reasonable length and scope of the Terry stop.  The jury was instructed to consider the

15 totality of the circumstances and, as explained above, there were several factors it could have

16 relied on to return a verdict in Rutherford's favor.  Defendants simply view the evidence in their

17 favor and conclude that Defendant Chin's use of his weapon was the sole basis on which the jury

18 could return a verdict on the first claim.  (Dkt. No. 183 at 16-17.)  Applying the proper,

19 deferential standard, the Court cannot make the same assumption.  Thus, Defendants' qualified

20 immunity argument is fatally flawed in its premise and is DENIED.

21       Second, even if the Court accepts for the sake of argument that the jury's verdict turned

22 solely on the use of the weapon, the Court finds that Defendant Chin violated clearly established

23 law and is not entitled to qualified immunity.

24

1    In performing a qualified immunity analysis, the Court engages in a two-step process in

2    no mandatory order.  Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).  The Court asks whether

3    the plaintiff has alleged a violation of a constitutional right and whether the constitutional right is

4    clearly established.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Here, the only question is

5    whether the constitutional right is clearly established, given the jury found Defendant Chin

6    violated Plaintiff's constitutional rights under the Fourth Amendment.

7    "[T]he law [is] clearly established that, when making a Terry stop, officers may not use

8    highly intrusive measures such as the ones used here [pointing a gun and ordering individuals out

9    of a car], unless the circumstances reasonably justify such extraordinary procedures in order to

10   ensure the officers' safety."  Washington v. Lambert, 98 F.3d 1181, 1192 (9th Cir. 1996).

11   "Under ordinary circumstances, when the police have only reasonable suspicion to make an

12   investigatory stop, drawing weapons and using handcuffs and other restraints will violate the

13   Fourth Amendment."  Id. at 1187.   The law is also "clearly established that if the Terry-stop

14   suspects are cooperative and the officers do not have specific information that they are armed or

15   specific information linking them to a recent or inchoate dangerous crime, the use of such

16   aggressive and highly intrusive tactics is not warranted . . . [unless] there are no other

17   extraordinary circumstances involved."  Id.  The extraordinary circumstances are four-fold:

18       our cases make clear that we have only allowed the use of especially intrusive means of
         effecting a stop in special circumstances, such as 1) where the suspect is uncooperative or
19       takes action at the scene that raises a reasonable possibility of danger or flight; 2) where
         the police have information that the suspect is currently armed; 3) where the stop closely
20       follows a violent crime; and 4) where the police have information that a crime that may
         involve violence is about to occur.

21   Id. at 1189.

22       Construing the facts in the light most favorable to Rutherford, Defendant Chin violated

23

24   clearly established law by using a weapon during the Terry stop and detaining Rutherford after

he learned he was not the driver of the parked vehicle.  The circumstances of the case show that none of the exceptional circumstances set out in Washington that allow the use of a gun is met.  First, construing the testimony in Rutherford's favor, it does not appear Rutherford was uncooperative—he sat in the road when asked and he remained there only until the speeding police vehicle appeared on the horizon caused him to fear for his safety.  Williams, 98 F.3d at 1189.  That he may have been reticent to act does not show lack of compliance.  Second, there was no indication he was armed.  Id.  Third, no violent crime had been observed.  Id.  Fourth, there was no information a new crime of violence was about to occur.  Id.  Instead, the use of the gun was largely occasioned by Defendant Chin's poor judgment that led him to exit his unmarked, personal vehicle in plain clothes on a dark dead-end street to confront three individuals who were no longer driving.  Moreover, Defendant Chin admitted he lacked probable cause to arrest Rutherford for the reckless driving and DUI offenses he believed he observed.  There is no basis on which to grant Defendant Chin qualified immunity, given that Defendant Chin violated clearly established law.

Defendants try to turn the state of the law on its head by suggesting "only in extreme circumstances have courts found a mere display of potential force to be sufficient to transform a Terry stop into an arrest."  (Dkt. No. 183 at 19.)  Astoundingly, Defendants cite Washington to make this point, while ignoring the very holding of the case.  Pointing and brandishing a gun during a Terry stop is only permissible in extreme cases.  Washington, 98 F.3d at 1192.  Defendants' argument is poorly thought through and certainly not well taken.

Defendants also seize on language in Washington to suggest an officer can always use a gun when outnumbered.  This is not a valid argument.  The court in Washington noted the Seventh Circuit has concluded that the use of a weapon can be proper in an investigative stop

1    where the officer is outnumbered.  Id. at 1190 (citing United States v. Serna-Barreto, 842 F.2d

2    965 (7th Cir. 1988)).  A close examination of Serna-Barreto does not support the broad rule

3    Defendants urge.  As the court in Serna-Barreto first noted, "[i]t would be a sad day for the

4    people of the United States if police had carte blanche to point a gun at each and every person of

5    whom they had an 'articulable suspicion' of engaging in criminal activity."  Id. at 967.  Only the

6    particular and unique facts of that case justified the use of the gun in effectuating the stop—facts

7    that are entirely distinct from those before the Court now.  In Serna-Barreto, a single officer at

8    night confronted a car carrying four individuals that he had observed engage in a drug sale.  Id.

9    The officer suspected the passengers were likely armed and willing to shoot an officer, and

10   indeed the defendant testified she was not scared by the gun.  Id. at 967-68.  In the case before

11   the Court here, however, no one was suspected of being armed, all three individuals were out in

12   the open and they complied with the officer's demands to be seated and answer questions.

13   Defendants make much of the fact Thant advanced on Defendant Chin, but the testimony at trial,

14   construed in Rutherford's favor, showed he only moved directly toward Defendant Chin when

15   ordered to do so.  Thus, the mere fact Defendant Chin was outnumbered does not entitle him to

16   qualified immunity.

17                                          **Conclusion**

18        Defendants have not shown any defect in the jury's verdict.  Defendants ignore the legal

19   standards requiring deference to the jury's verdict, and simply recast the testimony in their own

20   favor in contravention to the proper legal standard.  This is no basis to obtain relief.  Defendants

21   fail to show the jury's verdict was inconsistent or unsupported by the evidence.  Defendants have

22   also shown no right to qualified immunity given that Defendant Chin violated clearly established

23   law.  The Court DENIES the motion.

24

ORDER DENYING DEFENDANTS' RENEWED
MOTION FOR JUDGMENT AS A MATTER OF
LAW- 9

1    The clerk is ordered to provide copies of this order to all counsel.

2    Dated this 4th day of August, 2011.

3

4

5    _____
     Marsha J. Pechman

6    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24